UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACOB JAMES CLEVENGER,<br><br>Plaintiff,<br><br>v.<br><br>CORRECTIONS CORPORATION OF AMERICA, Inc., a foreign corporation; CCA WESTERN PROPERTIES, INC., an Idaho corporation; PHILIP VALDEZ, individually and in his official capacity; JOHN and JANE DOES 1-8, in their individual and official capacities,<br><br>Defendants. | Case No. 2:11-cv-00088-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently before the Court in this prisoner civil rights matter is Defendants'

Motion To Dismiss. (Dkt. 9.) Plaintiff has responded to the Motion (Dkt. 15), Defendants

have submitted a Reply (Dkt. 16), and the matter is now ripe.

The Court finds that decisional process would not be aided by oral argument, and

it will resolve this matter after consideration of the parties' written briefing. D. Idaho L.

Civ. R. 7.1(d). For the reasons set forth below, the Court will grant Defendants' Motion,

and Plaintiff's Complaint will be dismissed.

## BACKGROUND

At all relevant times, Plaintiff was incarcerated at the Idaho Correctional Center (ICC), which is a prison that is operated by the Corrections Corporation of America (CCA) under a contract with the state of Idaho. (Dkt. 1.)

Plaintiff alleges that ICC staff and officials failed to protect him from two serious assaults by rival gang members in 2010. Plaintiff was first assaulted on March 10, 2010, while he was exercising in a recreation room. (*Id*. at ¶ 13.) He claims that during this surprise attack he was punched and kicked repeatedly in the face and body. (*Id*.) After the assault, prison staff moved Plaintiff to a segregation unit on a different pod, where other gang members also resided. (*Id*. at ¶ 14.) Plaintiff contends that staff transferred him despite knowing that he would be in substantial danger if he were placed in the same area as members of the rival gang. (*Id*. at ¶¶ 15-16.)

On August 10, 2010, an ICC correctional officer in the central control room unlocked the door to Plaintiff's cell. (*Id*. at 14.) Believing that the door was unlocked because officers were delivering a mattress to his cell, Plaintiff stepped outside, where he was rushed and attacked by two prisoners. (*Id*.) Plaintiff contends that ICC staff contributed to or failed to prevent this assault and that he suffered serious and permanent injuries. (*Id*.) He claims that both assaults were part of a larger pattern or practice of deliberate indifference to inmate safety at ICC. (*Id*. at ¶ 11, a-g.)

In his Complaint, Plaintiff alleges five causes of action: two counts of negligence under state law (for the failure to protect him from harm and the failure to provide

**MEMORANDUM DECISION AND ORDER - 2**

adequate medical care); two counts of gross negligence/recklessness under state law,
based on willful, wanton, or reckless conduct (for the failure to protect him from harm
and the failure to provide adequate medical care); and one count arising under 42 U.S.C.
§ 1983, in which he alleges that prison officials "have enacted, pursued, acquiesced in,
and/or implemented policies and practices" that violated his Eighth Amendment rights.
(Dkt. 1, pp. 7-12.)

     Defendants have filed a Motion to Dismiss on the ground that Plaintiff failed to
exhaust the prison's administrative review process as to any current claim before filing
his Complaint. (Dkt. 9.) The matter is fully briefed, and the Court is prepared to issue its
ruling.

## STANDARD OF LAW

### 1.    The Exhaustion Requirement

     Because Plaintiff has raised one federal claim under 42 U.S.C. § 1983 and four
related state law causes of action, Defendants' Motion to Dismiss implicates the
exhaustion requirements of both state and federal law.

     Specifically, the federal Prison Litigation Reform Act (PLRA) requires pre-
complaint exhaustion of administrative remedies for all federal claims brought by state
prisoners who challenge the conditions of their confinement: "[n]o action shall be brought
with respect to prison conditions under section 1983 of this title, or any other federal law,
until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).
"There is no question that exhaustion is mandatory under the PLRA and that unexhausted

**MEMORANDUM DECISION AND ORDER - 3**

claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Under the PLRA, proper exhaustion is also required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Likewise, Idaho law contains a similar requirement that prisoners must exhaust administrative remedies before proceeding with civil lawsuits:

> Unless a petitioner who is a prisoner establishes to the satisfaction of the court that he is in imminent danger of serious physical injury, no petition for writ of habeas corpus *or any other civil action* shall be brought by any person confined in a state or county institution, or in a state, local or private correctional facility, *with respect to conditions of confinement* until all available administrative remedies have been exhausted.

Idaho Code § 19-4206(1) (emphasis added). The Idaho Court of Appeals has interpreted this statutory provision as requiring exhaustion for all civil actions that are related to conditions of confinement, which includes tort claims. *Drennon v. Idaho State Corr. Inst*., 181 P.3d 524, 526, 530 (Idaho Ct. App. 2007). Moreover, like the PLRA, the Idaho requirement mandates that the prisoner meet procedural deadlines to exhaust his

**MEMORANDUM DECISION AND ORDER - 4**

administrative remedies properly. *Butters v. Valdez*, 241 P.3d 7, 12 (Idaho Ct. App. 2010) (relying on federal law interpreting 42 U.S.C. § 1997e(a)).

In the Ninth Circuit, a claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). Defendants have the burden to plead and prove exhaustion, and the reviewing court may look beyond the pleadings to resolve disputed issues of fact, if necessary. *Id.*

## 2. ICC's Grievance Process

Although it is a privately-run prison, ICC follows the same three-step administrative grievance procedure that the Idaho Department of Correction uses, which requires a prisoner to submit an informal concern form describing the problem, followed by the filing of a formal grievance, and an appeal of any adverse decision. (Dkt. 9-2, Affidavit of Chester Penn at ¶ 9.)

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. (Penn Aff., ¶ 12.) If the issue is not resolved, the prisoner must then complete a grievance form and file the grievance within 30 days of the incident. (*Id.* at ¶ 13.) The grievance form must contain specific information regarding the nature of the complaint, including the dates, places, names, and how the offender has been adversely affected. (Id. at ¶ 14.) The "grievance coordinator" at the prison will route a properly completed grievance to the appropriate staff member, who must respond within

**MEMORANDUM DECISION AND ORDER - 5**

10 days. (*Id*.)

After the staff member responds, the grievance coordinator forwards the grievance to the "reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and the staff member's response and issues a decision. (*Id*. at ¶ 14.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 5 days to the "appellate authority," which is usually the facility head. (*Id*. at ¶ 15.) Once the appellate authority has issued its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (*Id*.)

## DISCUSSION

In support of their Motion, Defendants have submitted an affidavit from Chester Penn, the grievance coordinator at ICC and the custodian of ICC's grievance records. (Dkt. 9-2, Penn Aff.) Penn has found no record of a completed grievance by Plaintiff related to the prison's alleged failure to protect him from the March 10, 2010 assault or related to inadequate medical care following the assault. (*Id*. at ¶ 23.) Penn has found two grievance forms related to the August 10, 2010, assault, but one, dated September 18, was returned to Plaintiff because offender concern forms were not attached, and the second, dated December 28, 2010, was returned as untimely. Based on Penn's affidavit, Defendants argue that Plaintiff failed to complete the proper administrative process at ICC before filing this lawsuit.

Plaintiff argues that Defendants' Motion should be denied. He first contends that he actually exhausted his administrative remedies because (a) he spoke to prison staff and

**MEMORANDUM DECISION AND ORDER - 6**

expressed his concerns about being protected, (b) he completed three concern forms on the subject while he was in administrative segregation following the August 10 assault, and (c) he filled out and submitted a grievance form on September 18. (Dkt. 14, pp. 7-9.) He alternatively argues that even if he failed to complete all steps in the prison's established grievance procedure, he used an alternative route for bringing these issues to the attention of prison officials as part of the proceedings on a disciplinary offense report (DOR) that he received following the August 10 assault. (*Id.* at 10.) Finally, he asserts that even if he failed to complete the administrative process in any way, ICC staff's active interference prevented him from doing so, and the prison's administrative remedies were therefore not "available" to him for exhaustion. (*Id.* at 14-15.) The Court does not find any of these arguments to have merit on the evidence before it.

1.     **Plaintiff's Attempts to Use the Grievance Process Were Incomplete and Procedurally Improper**

Plaintiff appears to admit that he did not use official channels to submit a written grievance regarding the March 10 attack. Instead, he contends that he told prison staff about how he had not been protected and that he was still vulnerable to attack by gang members. The scope of proper exhaustion is defined by the prison's own administrative rules, and ICC's rules require the submission of written grievances to complete the administrative review process properly. *Jones*, 549 U.S. at 218. Plaintiff was given an inmate handbook that outlined the grievance procedure, and he is presumed to know those rules. Consequently, Plaintiff's verbal discussions with various staff members do not

**MEMORANDUM DECISION AND ORDER - 7**

constitute proper exhaustion as to the March 10 incident, and he has not exhausted any claim based on that assault.

Plaintiff was moved to a segregated housing unit after the August 10 attack. He asserts that while he was in segregregation, he wanted to alert officials about staff's "failure to act and to protect [him] from attack up to and including the day of [his] August 10 assault." (June 16, 2011 Declaration of Jacob Clevenger ("Clevenger Dec.," ¶ 4.) To that end, he claims that correctional officers gave him offender concern forms and instructed him to place a completed form in the door. (*Id*. at ¶ 5.) According to Plaintiff, he followed those instructions, and the form was gone the next day. (*Id*. at ¶ 6.) Plaintiff heard nothing back from staff, so he filled out a second concern form about a week later, which was also taken from the slot in the door. (*Id*. at ¶ 7.) Still receiving no response, he submitted a third concern form. (*Id*. 9.) According to Plaintiff, after he had filled out and received no response to three offender concern forms, he took the next step in the process and filed a formal grievance on September 18, 2010. (*Id*. at ¶ 11.)

Defendants have offered records showing that the September 18 grievance was returned to Plaintiff because he had not attached the concern forms that he claimed to have submitted, which is required by ICC's grievance policy. (Dkt. 9-2, p. 37-39.) Plaintiff waited nearly three months before he filed another grievance, on December 28, which was returned as untimely. (*Id*. at 40-41.)

On this record, the Court concludes that Plaintiff did not complete the grievance procedure in accordance with the prison's administrative rules. Even if the Court assumes

**MEMORANDUM DECISION AND ORDER - 8**

that Plaintiff filled out concern forms, as he claims, that is only the first step in the process. Plaintiff did not complete the process after his September 18 grievance was returned to him because he had failed to attach copies of his concerns forms.[1]

While it is true that Plaintiff wrote on the face of the September 18 grievance that he had "concerned" a particular correctional officer three times and received no response, ICC policy anticipates this problem and requires the prisoner to write "no response" on his own copy of a concern form and to submit that copy with the formal grievance. (Dkt. 9-2, p. 19.) Plaintiff did not follow that procedure. In fact, there is no evidence before the Court that Plaintiff pursued the matter after the grievance was returned to him. He does not claim that he attempted to explain to the grievance coordinator why he did not, or could not, attach copies of concern forms, nor is there any indication that he tried to appeal the decision as to the September 18 grievance. Instead, the evidence shows that Plaintiff did not follow up until he submitted a very similar grievance several weeks later, on December 28, which was returned as untimely.

Accordingly, the Court concludes that if Plaintiff started the administrative review process by filling out concern forms while he was in segregated housing within 30 days of the August 10 assault, followed by a grievance on September 18, he did not complete that process by going through all levels of review.[2]

---

[1] The grievance also appears to have been untimely because it was filed beyond the 30-day deadline, but that was not the reason given for the rejection.

[2] While it is not material to the outcome, the Court notes that Defendants have incorrectly stated that, "[a]lthough [Plaintiff] did file a grievance on September 18, 2010, he made no allegation that he ever

**MEMORANDUM DECISION AND ORDER - 9**

**2.      The DOR Procedure Did not Offer an Alternative Basis for Exhausting These Claims**

Plaintiff next contends that he exhausted his claims through his DOR hearing and his subsequent appeal. The Court disagrees and finds Plaintiff's reliance on Chief Judge Winmill's decision in *Riggs v. Valdez*, 2010 WL 4117085 (D. Idaho 2010), to be misplaced.

Ordinarily, all conditions of confinement issues must be raised in grievances rather than as part of prison disciplinary proceedings. In *Riggs*, Judge Winmill allowed some prisoners to proceed with "failure to protect" claims that they had raised in the DOR appellate process, but only after finding that the grievance system was unavailable to those prisoners as a practical matter because: (1) certain prisoners had attempted to file grievances raising failure to protect claims but were told to proceed through the DOR process; (2) the failure to protect claims were so closely tied to the events that formed the basis of the DOR charges that the distinction  between them was "exceedingly subtle"; (3) the prisoners were reasonably led to believe from the circumstances that the DOR process was the only forum in which they could raise all claims; and (4) the prisoners actually raised failure to protect issues in their DOR appeals. *Id.* at *8-10. On those facts, Judge

---

filed a concern form and it went ignored." (Dkt. 16, p. 5.) Contrary to this statement, the original grievance form that Defendants have submitted with their Motion reads, in part, "I concerned the unit manager Watts 3 times on 8-24-10, 9-1-10, and again on 9-10-10 stating the problem. I received no reply." (Dkt. 9-2, p. 38.) Perhaps the Defendants' error is the result of relying on the grievance coordinator's data entry on the computer record – which does not contain this explanation –  rather than the original handwritten grievance form.

**MEMORANDUM DECISION AND ORDER - 10**

Winmill concluded that the prisoners had sufficiently alerted officials to the nature of their claims through the only avenue of administrative relief that was effectively available to them, which was the DOR process. *Id.* at 11.

The present case is distinguishable. Unlike the prisoners in *Riggs*, Plaintiff did not receive confusing or misleading advice from the grievance coordinator that led him to believe that he must proceed with all related claims through the DOR process. More importantly, even under the unique circumstances in *Riggs*, only those plaintiffs that made a good faith effort to alert the prison of their failure to protect claims in their DOR appeals were allowed to go forward. Plaintiff has provided a copy of his completed DOR appeal form, and he did not raise failure to protect or medical issues in that appeal. He instead argued that he should not have been found guilty because he did not make a conscious decision to wait outside of his cell while his attackers approached him. (Dkt. 14-4, p. 1.) Essentially, Plaintiff was contesting the factual basis for the DOR charge rather than complaining to prison officials that their failure to protect him from assault or from offering him adequate post-assault medical care. For these reasons, *Riggs* affords him no relief.[3]

**3.    There is Insufficient Evidence to Find that Staff Misconduct Prevented Plaintiff from Completing the Prison's Administrative Review Process**

For his final argument, Plaintiff contends that prison officials interfered with his

---

[3] If anything, Plaintiff's situation is more analogous to the one plaintiff in *Riggs*, Rocha, who was not allowed to go forward because Rocha "did not make a good faith effort [in his DOR appeal] to alert prison officials to the facts comprising any current claim." *Id.* at *11.

MEMORANDUM DECISION AND ORDER - 11

ability to exhaust his claims, and he argues that the initial steps that he took should suffice. Plaintiff is correct that when prison officials prevent an inmate from using the correct channels to route an internal complaint, an administrative remedy that may be theoretically in place will not be available to the inmate as a practical matter, and the failure to adhere to the prison's technical requirements may be excused in a later civil rights lawsuit. *Nuñez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). But the Court does not find Plaintiff's claims of official interference, if any occurred, to have *caused* his failure to complete  the grievance procedure in this case.

Plaintiff focuses primarily on the three concern forms that he claims were not returned to him. He has not offered any evidence to corroborate this claim, such as providing his offender copies, but the Court will assume that he filled out these forms and received no response.

Still, Plaintiff overlooks that he was able to fill out a grievance form and that it was returned to him as incomplete. Plaintiff does not explain his failure to comply with the requirement that he attache his concern forms, nor does he address any other steps that he took immediately following the return of the grievance. Thus, Plaintiff has not established that the lack of a response at the concern form level was the cause of his failure to press forward and to complete all the steps in the *formal grievance procedure* in accordance with prison policy. The Court is left with the conclusion that, after the initial setback, Plaintiff did not diligently pursue the matter.

**MEMORANDUM DECISION AND ORDER - 12**

Plaintiff's position might be more favorable if the record established his diligence and persistence. For instance, his argument would carry more weight if he had responded quickly to the rejection of his September 18 grievance by explaining to the grievance coordinator why he did not or could not attach his concern forms. But it appears that Plaintiff simply decided to wait until December 28 to re-submit a grievance on the same basic facts. Even in that grievance, he does not argue that he was prevented from completing earlier, timely grievances by staff misconduct, and he did not appeal or contest the grievance coordinator's conclusion that the December 28 grievance was untimely.

Therefore, while Court understands that in certain circumstances prison staff misconduct can excuse a prisoner's failure to follow the proper administrative channels to exhaust a claim, it does not find those circumstances to exist here. Staff interference, if any, occurred at the concern form stage after the August 10 assault and was not the cause of Plaintiff's failure to exhaust his complaints.

The Court concludes that Defendants have carried their burden to show that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit as to all claims related to the March 10, 2010, and August 10, 2010 incidents. The Motion to Dismiss will be granted.

**MEMORANDUM DECISION AND ORDER - 13**

## ORDER

IT IS ORDERED that Defendants' Motion to Dismiss (Dkt. 9) is GRANTED, and

the Complaint is DISMISSED without prejudice.

DATED:  **March 8, 2012**

Honorable Edward J. Lodge
U. S. District Judge